## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

GUARANTEED RATE, INC.,                )
                                      )
            Plaintiff,                )
                                      )
      v.                              )        No. 12 C 81
                                      )
NHT LAW GROUP, APLC,                  )
                                      )
            Defendant.                )

### MEMORANDUM OPINION

Before the court is defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(2). For the reasons explained below, the motion is granted.

### BACKGROUND

This is an action for defamation *per se*, negligence, vicarious liability, statutory fraud, and deceptive trade practices in which jurisdiction is premised on diversity of citizenship. Plaintiff, Guaranteed Rate, Inc. ("Guaranteed Rate"), is a citizen of Delaware and Illinois; defendant NHT Law Group, APLC ("NHT") is a citizen of California. Plaintiff alleges that NHT and its marketing company[1] sent a fraudulent and defamatory letter to certain of plaintiff's customers.

---

[1] Plaintiff originally included, but then voluntarily dismissed, the "unknown marketing group" as a defendant. Since then, NHT has evidently provided plaintiff with the name of this entity, but plaintiff has not sought to add it as a defendant.

Guaranteed Rate is a "correspondent lender" that "work[s] with customers to provide loans on residential real estate" and "sells loans post-funding to its investors." (Compl. ¶¶ 8, 16.) It alleges that it has a "sterling reputation within the mortgage business" and that it "prides itself on providing the highest quality services and products for its customers." (Compl. ¶ 9.)

In December 2011, some of plaintiff's clients received a notice in the mail from "NHT Law Group" that was marked "personal and confidential" and bore a warning stating that any person who interfered with or obstructed delivery of the letter or otherwise violated provisions of the United States Code could face "5 yrs. imprisonment" or be fined $2,000. (Compl. ¶ 11 & Ex. A.) The notice contained two statements that plaintiff claims are misleading and defamatory:

- Why are you getting this notice? Court records indicate that a recent lawsuit has been filed against Guaranteed Rate Inc, with claims of Foreclosure Fraud, Mortgage Misrepresentation, and Unfair Business Practices. Due to the serious nature of this matter we ask that you respond promptly.

- What happens if you don't respond by January 7th: You may be eligible for representation in a case against Guaranteed Rate Inc, don't delay as only a specific group of people may qualify.

(Compl., Ex. A.) Included was a "Summary Of Proposed Changes Based On Eligibility" that plaintiff contends was a "completely fictitious calculation of the borrower's new payment based upon information that NHT" and its marketing company obtained from an

unknown source.  (Compl. ¶ 13 & Ex. A.)  The notices also provided a phone number for the recipient to call in the event that he or she had experienced "Sub Prime or Predatory Financing" or had been declined a loan modification or "Ignored by Guaranteed Rate Inc." (Compl. ¶ 14 & Ex. A.)

Plaintiff alleges that the notices portray it as having committed "extensive civil and criminal wrongs against its customers" when in fact it has not been involved in any lawsuit as described in the notices, declined modifications, or ignored efforts by borrowers to modify their loans.  (Compl. ¶¶ 15-16.)  It points out that as a correspondent lender, it does not maintain loans on its books.  According to plaintiff, the notice is "nothing more than a craven effort on behalf of NHT to solicit business by alarming [Guaranteed Rate's] valued customers with patently false and outrageous statements."  (Compl. ¶ 17.)

Two of plaintiff's customers who received the notice forwarded it to plaintiff, which immediately contacted NHT in an effort to prevent any additional notices from being disseminated.  NHT's principal, Paul Nguyen, responded that its marketing company had sent out the notices without NHT's approval.  Nguyen stated that NHT had "fired" the marketing company as well as the employee who had been responsible for marketing.  He also stated that the firm would not accept any new clients who telephoned NHT based on the notice and would notify these people that the notice was incorrect.

Plaintiff asked Nguyen to provide it with the distribution list used for the notices, but Nguyen stated that he was unable to obtain the list from the marketing company. (Compl., Ex. C.)

Plaintiff then filed this action, in which it alleges that it has suffered "substantial financial harm" as a result of NHT's conduct. (Compl. ¶ 36.) It seeks damages, including punitive damages, as well as attorney's fees.

NHT moves to dismiss the complaint for lack of subject-matter jurisdiction and for lack of personal jurisdiction.

## **DISCUSSION**

Federal Rule of Civil Procedure 12(b)(1) allows a party to raise by motion the defense of lack of subject-matter jurisdiction. If the complaint is formally sufficient but the contention is that there is in fact no subject-matter jurisdiction, we are free to look beyond the complaint and view and weigh the evidence that has been submitted on the issue. Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 444 (7th Cir. 2009).

Jurisdiction based on diversity exists if the amount in controversy exceeds $75,000 and the suit is between citizens of different states. 28 U.S.C. § 1332(a)(1). There is no dispute that the parties are of diverse citizenship, but the amount in controversy is disputed.

When the jurisdictional threshold is uncontested, we generally will accept the plaintiff's good-faith allegation of the amount in

controversy unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount.  McMillian v. Sheraton Chicago Hotel & Towers, 567 F.3d 839, 844 (7th Cir. 2009). But where, as here, the defendant challenges the plaintiff's allegation of this amount, the plaintiff cannot merely rest on its complaint alone.  As the proponent of federal jurisdiction, plaintiff has the burden of proving by a preponderance of the evidence facts that suggest that the amount-in-controversy requirement is met.  See Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 543 (7th Cir. 2006).  The plaintiff must do more than "point to the theoretical availability of certain categories of damages"; it must support its assertion with "competent proof." McMillian, 567 F.3d at 844.  Once the plaintiff has met this standard, the case may be dismissed only if it is "legally certain" that the recovery or cost of complying with the judgment will be less than the jurisdictional floor.  Meridian, 441 F.3d at 543.

NHT contends that the allegations regarding the damages suffered by plaintiff are too speculative and without adequate foundation to support a finding that diversity jurisdiction exists. NHT points out that the complaint fails to describe the "substantial financial harm" that plaintiff allegedly suffered and that while plaintiff asserts that it its reputation was damaged among its customers and potential customers, Compl. ¶ 30, there are no facts alleged that would support a damage award in excess of

$75,000. Attached to NHT's motion is the affidavit of Mr. Nguyen, who states that NHT was not involved in the preparation or distribution of the notices by its marketing company. Mr. Nguyen also states that he did not approve any notice concerning Guaranteed Rate and that upon learning of the notices, he terminated the employment of the employee who had been responsible for hiring the marketing company and advised his employees not to accept any cases involving the notices and to tell anyone calling in response to them that they were sent by mistake. (Def.'s Mot., Ex. A, Aff. of Paul C. Nguyen ¶¶ 11, 16-18.)

In response, Guaranteed Rate does not attempt to "show how the rules of law, applied to the facts of [its] case, could produce" an award that satisfies the jurisdictional minimum, as it must do. See Schlessinger v. Salimes, 100 F.3d 519, 521 (7th Cir. 1996). Rather, it plunges into an unstructured discussion of possible damages for reputational injury and lost business opportunities (which, we have determined from our own research, could be bases for damage awards on plaintiff's defamation and statutory fraud claims, see, e.g., Leyshon v. Diehl Controls N. Am., Inc., 946 N.E.2d 864, 874 (Ill. App. Ct. 2010) (defamation); Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc., 546 N.E.2d 33, 41 (Ill. App. Ct. 1989) (Consumer Fraud and Deceptive Business

Practices Act)).[2]  Plaintiff contends that it processes more than 22,500 mortgage applications per year in 45 states and has an annual revenue of about $180 million; that its reputation and good will is the "only basis" upon which customers can "reasonably be expected to choose" it over other businesses from whom they could obtain a mortgage and that it relies on repeat customers and referrals from current customers; that damage to its reputation would "substantially impair the value of the business"; and that "there is at least a reasonable probability that the damage done to [its] reputation exceeds the jurisdictional minimum." (Pl.'s Resp. at 8-9.)  As to the jurisdictional minimum, plaintiff argues as follows:

> [Plaintiff] averages roughly $500 in after-tax profit per loan.  As a result, if [plaintiff] lost out on only 150 customers as the result of the defamatory statements in the notices, [plaintiff] will have satisfied the $75,000 minimum; if only 50 people received these notices and they in turn only told 2 other people that [plaintiff] engaged in fraud and misrepresentation, the loss of those loans would also satisfy the jurisdictional minimum.
> . . .
> If the notices in question convinced only .6% of those individuals who have completed loans with [plaintiff] within the last year not to proceed with another loan [with plaintiff], then [plaintiff] has satisfied the jurisdictional minimum.

(Pl.'s Resp. at 9.)  Plaintiff also points to its prayer for punitive damages, asserting that its allegation of "actual malice

---

[2]/  Plaintiff does not raise the prospect of an award of presumed damages on its claim for defamation *per se*, nor does the complaint contain a prayer for such damages.  Likewise, plaintiff does not mention injunctive relief or its possible value.

and willfulness" is sufficient and that "no proof" regarding punitive damages is required at this stage.

Plaintiff relies upon only speculation that it can meet the jurisdictional threshold; it has failed to support its arguments with any "competent proof" whatsoever. "Competent proof" means "admissible evidence" that supports the plaintiff's estimate of recoverable damages. See Meridian, 441 F.3d at 542. (And contrary to plaintiff's assertion, the "competent proof" standard applies equally to its request for punitive damages, see Anthony v. Sec. Pac. Fin. Servs., Inc., 75 F.3d 311, 316-17 (7th Cir. 1996); In re Brand Name Prescription Drugs Antitrust Litig., 123 F.3d 599, 607-08 (7th Cir. 1997) (the proponent of federal jurisdiction must present evidence as to each form of relief sought and "cannot simply wave" the punitive damages statute "in [the court's] face[]")). Plaintiff attaches a number of exhibits to its response brief, but none of them are relevant to its arguments about the amount in controversy, so there is no evidence as to the nature of its business, reputation, or customers. There is no evidence regarding the size of the audience to whom the allegedly defamatory statements were made or the purported lost business opportunities. There is no evidence that plaintiff has suffered any concrete injury. And as for punitive damages, plaintiff offers no evidence of NHT's alleged "malice and willfulness" in making the statements, nor does it even cite any cases addressing whether Illinois

authorizes punitive damages awards as high as the jurisdictional minimum in the absence of concrete injury.

Because plaintiff has failed to present competent proof that this court has subject-matter jurisdiction over its claims, NHT's motion to dismiss the complaint pursuant to Rule 12(b)(1) will be granted. In light of this ruling, we need not address NHT's argument for dismissal based on lack of personal jurisdiction.

## **CONCLUSION**

Defendant's motion to dismiss the complaint for lack of subject-matter jurisdiction [10] is granted.


DATE:        July 5, 2012


ENTER:       _____

             John F. Grady, United States District Judge